IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RANDI ROBBINS and SHERRI MEYER, : : : Plaintiffs, : : v. : : METROPOLITAN LIFE INSURANCE COMPANY OF CONNECTICUT, : : Defendant. : : | CIVIL ACTION NO. 08-0191 |

**MEMORANDUM RE: MOTION FOR JUDGMENT ON THE PLEADINGS**

**Baylson, J.**                                                                                            **December 24, 2008**

Presently before the Court is Defendant's motion for judgment on the pleadings. In their suit, filed in federal court on diversity jurisdiction, Plaintiffs have alleged breach of contract, violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, and bad faith insurance arising out of a life insurance policy issued by Defendants. For the reasons set forth below, the Defendant's motion for judgment on the pleadings is granted.

**I.      Background**

      **A.      Facts**

Plaintiffs, Randi K. Robbins and Sherri K. Meyers, are owners and named beneficiaries of three life insurance policies issued by Defendant Metlife Life Insurance Company of

-1-

Connecticut[1] (hereinafter "Defendant" or "MICC") for the life of Bernard Klazmer. (Compl. ¶s 14, 15, 16). On August 27, 2003, Defendant issued Policy No. 7415517, which provided $665,000 in coverage for the life of Bernard Klazmer. The value of that policy was increased to $1,350,000 on August 27, 2005. (Compl. ¶ 14.) On April 27, 2005, Defendant issued both Policy No. 7466326, worth $1,650,000, and Policy No. 7466327, worth $1,000,000, in additional insurance for the life of Bernard Klazmer. (Compl. ¶s 15, 16.) Both of the April 2005 Policies contained a Premium Based Scheduled Increase Rider (hereinafter referred to as the "PBSI Rider"), which provides for annual increases to the stated amount of the policy on each policy anniversary. (Compl. ¶ 18, Ex. A.) The PBSI Rider also states that the rider will terminate on the earliest of several possible dates, including the date of policy termination or maturity. (Id.)

Bernard Klazmer, the Insured, died on January 16, 2006. (Compl. ¶ 19.) On April 15, 2006, the Plaintiffs made claims to Defendant for payment of all amounts to which they were entitled under the three Policies. (Compl. ¶ 20.) Defendant elected to conduct a "contestability review" of those Policies, or the portions of the Policies, that had not been in effect for more than two years before the Insured's death, as provided for under those Policies. (Compl. ¶ 21, 22.) On June 28, 2006, Defendant paid Plaintiffs $665,000 representing the uncontestable portion of the initial 2003 Policy (No. 7415517). (Compl. ¶ 27.) After concluding its review on August 18, 2006, Defendant paid the remaining benefits under all three Policies, including $685,000 under Policy No. 7415517, $1,650,000 under Policy No. 7466326, and $1,000,000 under Policy

---

[1] According to MICC, the company that originally issued the policies was Travelers Life and Annuity Company. Metlife, Inc., the parent company of MICC, subsequently acquired Travelers Life and Annuity Company and changed its name to MetLife Life and Annuity Company of Connecticut, before merging it into MetLife Insurance Company of Connecticut (MICC).

No. 7466327. (Compl. ¶ 29.)

Plaintiffs then contacted Defendant regarding the PBSI Rider, and Plaintiffs allege Defendant initially suggested that they had no knowledge of the Rider. (Compl. ¶ 31.) Plaintiffs reasoned that the Rider entitled them to additional benefits in the amount of the annual increases for both April 2005 Policies. (Compl. ¶ 34.) Plaintiffs also suggested that, under applicable law, they were entitled to interest on all of the death benefits not paid within thirty days of the claim. (Compl. ¶ 35.) In response, Defendant explained that it initially did not recognize the reference to the PBSI Rider and was confused by the acronym, as it was previously known as the "Scheduled Increase of Premium Rider (SIOP)." (Def.'s Reply at 9.) However, Defendant noted that the PBSI Rider annual increase did not apply because the Insured died before the anniversary date, and thus the polices and riders terminated before the annual increases had occurred. (Id.) Defendant further counters that it already paid to Plaintiffs the required interest on the awarded death benefits and attached to its reply a letter sent to Plaintiffs explaining the breakdown of interest payments as well as the 1099 Interest Income Forms for each beneficiary.[2] (Def.'s Memo at 15 and Ex. C.)

As a result of Defendant's refusal to pay the additional amounts, Plaintiffs filed this suit alleging breach of contract (Count I), violation Pennsylvania's Unfair Trade Practices and Consumer Protection Law (Count II), and bad faith (Count III). (Doc. 1.) Defendant filed an Answer (Doc. 17) and then moved for judgment on the pleadings (Doc. 25.)

---

[2]Because Plaintiffs' pleadings on their request for interest were unclear, the Court requested the parties submit letters clarifying the interest at stake. In their response to the Court, Plaintiffs explained that they demanded interest only on the unpaid death benefits allegedly due under the Rider. Plaintiffs agreed that Defendant had paid all interest owed on the other death benefits already paid.

### B.     Parties Contentions

Defendant asserts that it is entitled to judgment as a matter of law because under the clear language of the insurance policy, the PBSI Rider terminates upon policy termination and the policy terminates when the Insured dies.  (Def.'s Memo at 9.)  Thus, the Rider terminated before the policy anniversary, as the Insured died before that date, and Plaintiffs are not entitled to the annual increase.  Because Defendant otherwise paid Plaintiffs all benefits to which they are entitled under the Policies, including interest, Defendant did not breach any contract.  (Def.'s Memo at 10-11.)

Furthermore, Defendant argues Plaintiffs have not pled justifiable reliance on any alleged misrepresentation or wrongful conduct of Defendant as required for a private right of action under Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"). (Def.'s Memo at 12-13.)  Defendant further asserts it has not acted improperly and instead engaged in a timely contestable review before paying the death benefits in full.  (Def.'s Memo at 14.)  Finally, Defendant contends that Plaintiffs have made no allegations to support their bad faith claim, especially when Defendant ultimately provided the benefits.  (Id.)

Plaintiffs respond that they are entitled to the increases because the April 2005 Policies were still in effect while Defendant engaged in the contestable review, which lasted beyond the Policy Anniversary dates, and thus the annual increases became due.  (Pl.'s Memo at 10.)  The Policies, and thus the Riders, only terminated when Defendant paid out the benefits, thereby fulfilling its obligations under the contract.  (Pl.'s Memo at 10-11.)  Plaintiffs point out that there is no clear language in the Policies indicating that the policies terminate with the death of the insured and any ambiguity must be construed against the insurer.  (Id.)

With respect to the UTPCPL, Plaintiffs respond that the evidence that Defendant was "not aware" of the Riders indicates that Defendant engaged in some wrongful or deceptive conduct. Plaintiffs specifically suggest that Defendant's assertion that it did not know of the Riders indicates Defendant never had any intention of paying any increases that might be due under the Riders. Although Plaintiffs are unable to establish the extent of Defendant's improper behavior, they argue they have at least satisfied the pleading requirements and deserve to proceed to discovery to learn how Defendant handled, or mishandled, Plaintiff's claim. (Pl.'s Memo at 14-16.) Similarly, Plaintiffs argue they have sufficiently pled that Defendant acted in bad faith because they unreasonably denied the additional death benefits and were initially unaware of the Rider. As such, Plaintiffs should be permitted to pursue this claim with further discovery. (Pl.'s Memo at 17.)

## II. Legal Standards

### A. Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

### B. Standard of Review

The court may only grant a motion under Federal Rule of Civil Procedure 12(c) if "'the movant clearly establishes that no material issues of fact remains to be resolved and that he is entitled to judgment as a matter of law.'" Nesmith v. Independence Blue Cross, 2004 WL 253524, at *3 (E.D. Pa. Feb. 10, 2004) (quoting Corestates Bank, N.A. v. Huls Am., Inc., 176 F.3d 187, 193 (3d Cir. 1999). In deciding a motion for judgment on the pleadings under Rule

12(c), the court uses the same standard as when deciding a motion to dismiss under Rule 12(b)(6). Nesmith, 2004 WL 253524, at *3 (E.D. Pa. Fed. 10, 2004) (citing Constitution Bank v. DiMarco, 815 F. Supp. 1154 (E.D. Pa. 1993)). Thus, the motion will be granted only when it is certain that no relief could be granted under any set of facts that could be proved by the plaintiff. Taj Mahal Travel, Inc. v. Delta Airlines, Inc., 164 F.3d 186, 189 (3d Cir. 1998). The Court must also accept as true all well-pleaded allegations in the complaint and view them in the light most favorable to the nonmoving party. Consolidated Rail Corp. v. Portlight Inc., 188 F.3d 93, 94 (3d Cir. 1999). The Court will likewise make all reasonable inferences that can be drawn from the well-pleaded allegations. Fellner v. Tri-Union Seafoods, L.L.C., 539 F.3d 237, 242 (3d Cir. 2008).

As in a 12(b)(6) motion, the Court may look only to the facts alleged in the complaint and its attachments. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1251, 1261 (3d Cir. 1994); see also U.S. Fidelity and Guaranty Co. v. Tierney Assocs., Inc., 213 F. Supp. 2d 468, 470 n.2 (M.D. Pa. 2002) ("Consideration of the content of documents to which a complaint makes reference in deciding a Rule 12 motion is, of course, appropriate.").

A valid complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to state a valid complaint a plaintiff must make a "showing" that is more than just a blanket assertion that he is entitled to relief. Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008). "We caution that without some factual allegation in a complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice' but also 'grounds' on which the claim rests." Id. (citing Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1965 n. 3 (2007)).

**III.     Discussion**

    **A.     Breach of Contract Claim**

Defendant argues that Plaintiffs cannot establish a breach of contract claim for failure to pay the PBSI Rider annual increase given the facts asserted in the pleadings. To establish a breach of contract under Pennsylvania law,[3] Plaintiffs must show "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." Omicron Systems v. Weiner, 860 A.2d 554, 564 (Pa. Super. 2004). Plaintiffs and Defendant essentially agree on all facts material to this claim. Thus, to grant the motion for judgment on the pleadings, this Court must conclude that Defendant deserves judgment as a matter of law, i.e., this Court could not find a contract existed that imposed a duty on Defendant to pay the annual increase under any set of facts offered by the Plaintiff. See Taj Mahal Travel, 164 F.3d at 189.

Interpretation of contracts is a legal matter to be determined by the court rather than by a jury. Barrer v. Metro. Life Ins. Co., 151 F. Supp. 3d 870, 874 (E.D. Pa. 2001); Standard Venetian Blind Co. v. Am Empire Ins. Co., 469 A.2d 563, 566 (Pa. 1983). When the words in an insurance policy are clear and unambiguous, a court must give them their plain and ordinary meaning. Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 220 (3d Cir. 2005). If the terms are ambiguous and the intention of the parties cannot be discerned from the policy, the court "may look to extrinsic evidence of the purpose of the insurance, its subject matter, the situation of the

---

[3]Under Pennsylvania law, actions arising from an insurance policy are governed by the law of the state in which the policy was delivered. CAT Internet Servs., Inc. v. Provident Washington Ins. Co., 333 F.3d 138, 141 (3d Cir. 2003). The Policies here were delivered in Pennsylvania and thus Pennsylvania law applies to this matter.

parties and the circumstances surrounding the making of the contract." Id.  Notably, while the ambiguous terms should be strictly construed against the insurer, "the policy language must not be tortured to create ambiguities where none exist." Id.

Plaintiffs are correct that there is no clear indication in the Policies' language that the Policies, and therefore the Riders, terminate upon the death of the Insured.  However, the absence of such explicit language does not necessarily mean that the Insured's life insurance benefits continue to accrue after death, until the Insurance company makes a final payment of benefits to the named beneficiaries under the contract.  Rather, an examination of the Policy language and a consideration of the general purpose of life insurance indicate that the Rider in question stops accruing benefits at the time of death.

First, the PBSI Rider provides for annual increases to the "Stated Amount," (Compl. Ex. A, Pg. 24), which is defined as the amount used to determine the Death Benefit.  (Compl. Ex. A, Pg. 11.)  According to the Policy, the Death Benefit is "the Amount Insured <u>at the time of death</u>." (Compl. Ex. A., Pg. 12) (emphasis added.)  Thus, even if the Plaintiffs are correct that the Policies, and therefore the Riders, do not officially terminate upon the Insured's death, the death benefit, and logically any additions to it such as the annual increases, stop accruing at that time.  It would make little sense for this Court to construe the benefits as fixing at the time of death while at the same time interpreting increases to those benefits as continuing after the time of death.  The Court will not torture the language of the policy to create an ambiguity where one clearly does not exist.

Moreover, the Court has examined several treatises on insurance, all of which are in agreement that life insurance benefits become due upon the death of the insured.  Insurance

generally "is a contractual arrangement under which one party, an insurer, contracts with another, the insured, to pay money to the insured or a designated beneficiary on the fortuitous happening of stipulated contingencies of harm to the person or property insured." 28 Bertram Hartnett and Irving I. Lesnick, Appleman on Insurance § 173.01 (2d ed. 2006). Accordingly, "in life assurance, the basic adverse contingency is the death of the insured." Id.; see also 2 Jeffrey W. Stempel, Stempel on Insurance § 18.01 (3d ed. 2008) ("The contingency in life insurance is when the insured life will become deceased."); Robert H. Jerry, II, Understanding Insurance Law 36 (3d ed. 2002) ("[L]ife insurance is a contract under which the insurer promises to pay proceeds upon the death of the person whose life is insured."). Thus, even if the language in the contract did not explicitly indicate or otherwise suggest that the policy terminated and benefits stopped accruing on death, the general purpose and policy behind life insurance implies such a condition exists. As Defendant and the deceased clearly intended to enter into a life insurance contract, the Court must honor that intent; absent strong evidence to the contrary, the Court will assume the parties intended to enter into a basic life insurance contract under which benefits, including any additions or increases, become due upon the death of the insured.

  Furthermore, adhering to Plaintiffs' interpretation would be particularly unfair where, as here, an Insurance company has a statutory and contractual right to conduct a contestable review if the Insured dies within two years of the policy's date of issue. See 40 P.S. § 510(c) (requiring all life insurance contracts contain an incontestability clause providing a period of two years from the date of issue during which the policy may be contested by the insurer); (Compl. Ex. A, Pg. 9.). To allow accrual of benefits after death would force Insurance companies to choose between conducting a contestable review, which they specifically contracted for in the policy and are

entitled to under law, and risking accrual of additional benefits by delaying the final payment of benefits for the time to conduct a review.  Judge Surrick recognized previously that the "decision of whether to pay a claim is an important one" and refused to "require insurance companies to work so quickly as to adversely impact on the quality of their decisions." Weiner v. Banner Life Ins. Co, 2003 U.S. Dist. LEXIS 4957, at *22 (E.D. Pa. Feb. 28, 2003) (citing Matincheck v. Joan Alden Life Ins. Co., 93 F.3d 96, 103 (3d 1996)).   This Court agrees and will not strain to interpret the policy language so as to force companies to hasten their decision-making in order to avoid paying additional extra benefits.

Accordingly, any annual increases under the Rider must be fixed at the time of death. Because the Insured died before the Anniversary Policy date, no annual increases had accrued under the PBSI Rider.  Thus, Plaintiffs will not be able to establish their breach of contract claim, and Defendant is entitled to judgment on the pleadings for Count I.

### B. Unfair Trade Practices and Consumer Protection Law Claim

Pennsylvania's Unfair Trade Practices and Consumer Protection Law generally prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." 73 P.S. § 201-3 (2007).  "Unfair methods of competition" and "unfair or deceptive acts or practices" are defined, in part, as "fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding." 73 P.S. § 201-2(4)(xxi).  "Every plaintiff asserting a claim under the UTPCPL must plead and demonstrate justifiable reliance on the alleged misrepresentation or wrongful conduct of the seller." Wise v. Am. Gen. Life Ins. Co. 2005 WL 670697, at *7 (E.D. Pa. March 22, 2005); see also Toy v. Metropolitan Life Ins. Co., 928 A.2d 186, 202-03 (holding that justifiable reliance is an element of the Consumer Protection

Law).  Under the Law, only malfeasance, rather than nonfeasance, raises a cause of action.  Horowitz v. Fed. Kemper Life Assurance, 57 F.3d 300, 37 (3d Cir. 1995).  Allegations of improper conduct during an investigation of an insurance claim suggest malfeasance and are thus actionable under the UTPCPL.  Simon v. Unum Provident Corp., 2002 WL 1060832, *8-9 (E.D. Pa. May 23, 2002).

In the Complaint, Plaintiffs allege Defendant violated the statute by "failing to objectively and fairly evaluate Plaintiffs' claims; asserting defenses without reasonable basis in fact; unnecessarily and unreasonably compelling litigation; conducting an unreasonable investigation of Plaintiffs' claims; and unreasonably withholding policy benefits." (Compl.¶ 50).  Plaintiffs then suggest in their brief that Defendant's unawareness of the PBSI rider, as indicated in the August 18, 2006 letter, amounts to actionable misfeasance or malfeasance under the UTPCPL.

Upon examination of the Complaint, this Court finds that Plaintiffs have failed to allege sufficient facts to support their claim that Defendant acted improperly in violation of the statute.  To satisfy their burden under the UTPCPL, Plaintiffs must allege more than that Defendant simply did not pay the Rider benefits, as a valid claim requires evidence of malfeasance.  However, other than noting the four month delay in the provision of benefits, due to the contestability review, and alleging Defendant lacked of knowledge of the Rider, which Defendant explains as mere confusion over the name of the Rider, the Complaint does not contain any facts upon which Plaintiffs could rely to support its blanket allegations that Defendant acted unreasonably or unfairly.  Contra Simon, 2002 WL1060832, at *9 (concluding the plaintiff had an actionable claim because it "provided evidence from which a reasonable jury could conclude Defendants improperly performed an investigation.").

Those facts on which Plaintiff does rely are not sufficient to support its claim. The mere passage of four months before benefits were ultimately provided, especially without allegations of other improper conduct during the investigation, is insufficient to sustain the allegation of malfeasance. The Third Circuit has not set parameters for the timeliness of fraud investigations for life insurance claims. Weiner, 2003 U.S. Dist. LEXIS 4957, at *23. However, Judge Surrick in Weiner noted that other courts in this District have repeatedly observed that fraud investigations for accident insurance can legitimately take many months. Id. (citing Quaciari v. Allstate Ins. Co., 998 F. Supp. 578, 579-80 (E.D. Pa. 1998) and Segall v. Liberty Mutual Ins. Co., 2000 U.S. 2000 WL 1694026, at*2 (E.D. Pa. Nov. 9, 2000)). Judge Surrick was thus satisfied that the four month delay–the same as alleged here–for the life insurance investigation at issue in the case before him did not establish a UTPCPL or bad faith claim.

Plaintiffs also suggest that Defendant's lack of awareness about the PBSI Rider is evidence that it acted improperly. (Pl.'s Memo at 15). Plaintiffs argue this fact implies that Defendant never had any intention of fulfilling the PBSI obligations. (Id. at 16). First, Plaintiffs provide absolutely no evidence or additional factual allegations to support this inference; while Plaintiffs may be entitled to all "reasonable inferences." the Court cannot reasonably conclude Defendant intended to withhold benefits from this single, conclusory allegation.

Even more, this Court has already concluded that Defendant was not required to assess the PBSI Rider increases under the terms of the contract. Where Defendant had no obligation to pay the annual increases on the April 2005 policies, or interest thereon, and thus reasonably denied those benefits, it cannot be held responsible under the UTPCPL for failing to provide those payments or for not intending to pay them. See Cantor v. Equitable Life Assur. Society of

U.S., 1999 WL 219786, *5 (E.D. Pa. 1999) (concluding that the plaintiff failed to carry its burden on the UTPCPL claim where the court found that the defendant had a reasonable basis to terminate the plaintiff's benefits under the policy); cf. Williams v. Hartford Cas. Ins. Co., 83 F. Supp. 2d 567, 574 (E.D. Pa. 2000) (noting that "if there is a reasonable basis for delaying resolution of a claim, even if it is clear that the insurer did not rely on that reason, there cannot as a matter of law, be bad faith").  Thus, Plaintiffs cannot rely on Defendant's lack of knowledge of the Rider, which according to Plaintiffs indicates Defendant's intent to refuse payments under the Rider, as evidence of Defendants's unfair and improper investigation because Defendant was never under any obligation to make such payments.

In Wiener, Judge Surrick dismissed the claims, finding that the claim for malfeasance was not "supported by a realistic reading of the facts." 2003 U.S. Dist. LEXIS 4957, at *18. Similarly, Plaintiffs here do not have the factual support necessary to sustain their claim of an improper investigation under the UTPCPL.  To the extent that Plaintiffs also allege Defendant violated the statute by unreasonably denying benefits under the PBSI Rider, that claim is best characterized as nonactionable nonfeasance.  Yet even if this Court were to label the claim malfeasance, a defendant cannot be liable under the UTPCPL where it reasonably denies benefits, as explained above, and the Court has already concluded that Defendant reasonably denied the Rider increase payments.  Therefore, Defendant is entitled to judgment as a matter of law, and the motion for judgment on the pleadings is granted for Count II as well.

### C. Bad Faith Insurance

Plaintiffs also assert that Defendant acted in "bad faith," in violation of 42 Pa. C.S.A. § 8371.  The term "bad faith" includes "any frivolous or unfounded refusal to pay proceeds of a

policy . . . . For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a duty (i.e., good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith." Terletsky v. Prudential & Casualty Ins. Co., 649 A.2d 680, 688 (Pa. Super. 1994).

To establish liability under this statute, a plaintiff must demonstrate that (1) the insurer lacked a reasonable basis for denying the benefits under the policy and (2) the insurer knew or recklessly disregarded its lack of reasonable basis. Northwestern Mut. Life Ins. Co. v. Babayan, 430 F.3d 121, 137 (3d Cir. 2005). This Court has recently noted that a bad faith claim does not require the denial of benefits; rather, a plaintiff can ultimately receive benefits from the defendant and still allege bad faith based on the temporary denial or suspension of benefits. Kohn v. Unum Provident Corp., 2008 WL 4787556, at *8 (E.D. Pa. Oct. 31, 2008).

As in their UTPCPL claim, Plaintiffs allege that Defendant specifically violated the statute by "failing to objectively and fairly evaluate Plaintiffs' claims; asserting defenses without reasonable basis in fact; unnecessarily and unreasonably compelling litigation; conducting an unreasonable investigation of Plaintiffs' claims; and unreasonably withholding policy benefits." (Compl.¶ 54). In their brief, Plaintiffs focus on Defendants' "unreasonable refusal to pay all death benefits owed to Plaintiffs," specifically the PBSI Rider increase, as indicated by Defendant's alleged lack of knowledge of that Rider, and request discovery on Defendant's claims handling practices. (Pl.'s Memo at 17). However, Plaintiffs have again failed to provide sufficient facts to support these allegations or, more importantly, to suggest that Defendant lacked a reasonable basis for the denial of the benefits.

Once again, the four month delay is not, by itself, so unusual or unreasonable to indicate

bad faith. As Judge Surrick concluded, "while it might have been possible to conduct the investigation and evaluation more quickly, four months is not an unreasonable amount of time for such an investigation." Weiner, 2003 U.S. Dist. LEXIS 4597, at *22.

Even more importantly, as in their UTPCPL claim, Plaintiffs cannot base their claim on Defendant's alleged lack of a reasonable basis for refusing to pay the benefits. As discussed above, Pennsylvania courts apply an objective test to the reasonable basis question: as long as a reasonable basis for denying the claim exists, even if it is not the actual basis relied upon by the insurance company, bad faith has not occurred. Williams, 83 F. Supp. 2d at 574. Because this Court has found that the contract did not require Defendant to pay the increase if the Insured died before the anniversary date, Defendant had a reasonable basis for denying the claim for the PBSI Rider increase. Thus, regardless of whether the four month delay and alleged lack of knowledge about the PBSI Rider would otherwise amount to sufficient evidence, Plaintiffs cannot rely on the denial of the PBSI Rider benefit to sustain their bad faith claim.

Plaintiff's have not indicated they were otherwise denied benefits upon which they base their bad faith claim. Therefore, the Court will grant the motion for judgment on the pleadings for Count III.

### IV. Conclusion

For the foregoing reasons, Defendant's motion for judgment on the pleadings is granted. Based on this court's review of the contract, Plaintiffs cannot establish a breach of contract claim as a matter of law. Plaintiffs have also failed to provide sufficient facts to support their UTPCPL and bad faith claims and will be unable to prove these claims as a matter of law based on the Court's conclusion that Plaintiffs were not entitled to the PBSI Rider increase. Thus Defendant

is entitled to judgment as a matter of law on those counts as well.  As Plaintiffs are not entitled to any death benefits under the Rider, they are also not entitled to any additional interest payments.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RANDI ROBBINS and SHERRI MEYER, <br><br> Plaintiffs, <br><br> v. <br><br> METROPOLITAN LIFE INSURANCE COMPANY OF CONNECTICUT, <br><br> Defendant. | CIVIL ACTION <br><br> NO. 08-0191 |

### ORDER and FINAL JUDGEMENT

AND NOW, this 24th day of December 2008, for the reasons stated in the foregoing Memorandum, it is hereby ORDERED that Defendant's motion for judgment on the pleadings is granted for all claims. It is further ORDERED that Defendant's Motion for Sanctions is DENIED.

Final judgment shall be entered in favor of Defendant and against Plaintiffs. The Clerk shall close this case.

BY THE COURT:

/s Michael M. Baylson
Michael M. Baylson, U.S.D.J.

O:\CIVIL 07-08\08-191 Robins v. Metlife- Motion for J on the Pleadings.wpd